The J. S. Bradley Co., Appellant, *v.* Squire, Supt. of
Banks, Appellee.

(Decided October 30, 1939.)

*Mr. Harry S. Bugbee* and *Messrs. Levison & Levison,* for appellant.

*Mr. Thomas J. Herbert,* attorney general, *Mr. Nicholas J. Walinski, Mr. Lehr Fess* and *Mr. D. L. Sears,* for appellee.

Carpenter, J.  In this action, the plaintiff, a real estate brokerage company, sought to recover from the defendant, the Superintendent of Banks of Ohio (herein referred to as the superintendent), a broker's commission for the procuring a tenant, The Toledo Edison Company, for a substantial part of what was the board of trade building, a property of a holding company of The Ohio Savings Bank & Trust Company (herein referred to as the bank) which the superintendent took over for liquidation in 1931.  The jury returned a verdict for the plaintiff, but, on motion of the defendant, the trial court entered judgment for

the defendant. From this, plaintiff appealed on questions of law.

Various errors are assigned, only one of which appears to this court to require discussion, *viz.:* The entry of judgment notwithstanding the verdict. To do this the trial court must have given a negative answer to one or both of two questions: (a) Did the evidence tend to prove that the plaintiff and the superintendent entered into a brokerage contract, and, if so, (b) did the plaintiff perform it?

This court finds in the record evidence tending to prove that the plaintiff and Wm. M. Konzen, an employee of the superintendent, did agree that if plaintiff would procure a purchaser or tenant acceptable to the superintendent for the building in question, it would be paid by the superintendent the commission fixed as a standard by the Toledo Real Estate Board, *viz.:* 3 per cent of the purchase price or of the aggregate rental agreed upon, and also evidence that plaintiff did procure The Toledo Edison Company as such tenant, which was accepted by the superintendent.

The serious question is whether, under the evidence herein, the superintendent was bound by that brokerage contract. When the bank was taken over for liquidation in 1931, the superintendent appointed Konzen an examiner in connection with that liquidation process. In November 1933 he was appointed a special deputy in charge of that liquidation and was so acting on March 8, 1935, when the lease to the Edison company was entered into.

From plaintiff's evidence it appears that from June 1932, almost to March 8, 1935, Mr. Bradley of the plaintiff company, as a broker, had many conversations looking to the procurement of the Edison company as a tenant, but there is no evidence that the superintendent ever knew anything about the plaintiff's connection with the transaction until some time after the lease had been signed, or that he ever directly

or indirectly gave Konzen authority to employ a broker for any purpose or that plaintiff ever sought the approval of his employment by the superintendent. This situation presents the one problem in the case— whether Konzen as an examiner, or later as a special deputy, had authority to make the contract the plaintiff claims he did. Assuming that by Konzen's continued dealings with J. S. Bradley, after Konzen became a special deputy, he ratified all that had previously taken place while he was an examiner, any question about his authority as an examiner becomes unimportant and leads to the real question: Konzen's authority as a special deputy.

Ira J. Fulton was Superintendent of Banks in 1931 when the bank was taken over for liquidation and so continued until January 14, 1935, when he was succeeded by Samuel H. Squire who still occupies that office. Mr. Fulton was not called as a witness. On cross-examination, Mr. Squire was asked and answered:

"Q. And he [meaning Konzen] was your exact representative here for any business in Toledo, is that right. A. He was in charge as my representative of The Ohio Savings & Trust Company."

He also testified that the terms of the proposed lease with The Toledo Edison Company were submitted to him and that he approved them and authorized the making of the lease, and it is signed for him by Mr. Konzen as "Special Deputy Supt. of Banks of the state of Ohio in charge of the liquidation of The Ohio Savings Bank & Trust Co."

Mr. Konzen testified that he was in "complete charge" of the leasing and selling of real estate of the bank, but denied that he ever had any talk with Bradley about leasing the building, and said that all of his talk with him related to a sale. He also said that neither Fulton nor Squire ever authorized him to employ a broker in connection with leasing the property.

Mr. Konzen, as a "special deputy superintendent," being a public officer, could exercise only such powers as were bestowed upon him by statute and all persons dealing with him were bound to know what those powers were. The Ohio banking act invests the superintendent with two separate powers to appoint deputies and other assistants, one in connection with the administration of operating banks, Section 710-7 *et seq.,* General Code, and the other incident to the liquidation of banks, Section 710-85 *et seq.,* General Code.

Prior to March 31, 1933, Section 710-94, General Code, authorized the superintendent to appoint "one or more special deputy superintendents of banks as agent or agents to assist him in the duty of liquidation," etc. Nowhere was the appointment of an "examiner" in connection with liquidation expressly authorized, but Section 710-95, General Code, was, no doubt, broad enough to empower such appointment, but the term "examiner" would hardly imply authority to employ an agent such as a broker.

In November 1933, when Konzen was appointed a "special deputy," Section 710-94, General Code, had been amended (115 Ohio Laws, 135) and the material parts of it were as follows:

"The Superintendent of Banks may appoint one or more special deputy superintendents of banks as agent or agents to assist him in the duty of liquidation and distribution of the assets of one or more banks * * *.

"Such special deputy superintendent of banks may execute, acknowledge and deliver any and all deeds, assignments, releases or other instruments necessary and proper to effectuate any sale or transfer or encumbrance of real estate or personal property; and any deed or other instruments executed pursuant to the authority hereby given shall be as valid and effectual for all purposes as if the same had been executed by the Superintendent of Banks.

"The Superintendent of Banks may also employ such assistants, agents, clerks, auditors and examiners as he may deem necessary in connection with the liquidation and distribution of the assets of any such bank."

If the first sentence above quoted, which confers power on the special deputy "to assist" the superintendent, stood alone, the claim of plaintiff that Konzen as a special deputy had implied authority to employ such an agent as a broker might be tenable, but when the last-quoted sentence so explicitly places the appointing duty upon the superintendent, the maxim of construction, *expressio unius est exclusio alterius,* precludes such power in the special deputy. If the special deputy needed agents or other such employees, it was for the superintendent to appoint them for him. As this record stands, it is not necessary to decide whether the superintendent could expressly empower a special deputy to employ a broker and bind the superintendent, for there is no evidence tending to prove that such delegation of authority was ever attempted.

All of this leads to the conclusion that Mr. Konzen had no power to make the contract upon which the plaintiff stands. Lacking that power, it is immaterial what his dealings with the plaintiff were, for the claimed contract could have no validity, and, lacking validity, it is immaterial what plaintiff may have done in performance of his claimed contract, and the trial court did not err when it gave a negative answer to the first question posed herein and entered the final judgment for the defendant, and that judgment is affirmed.

*Judgment affirmed.*

OVERMYER and LLOYD, JJ., concur.